IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.:   2:21-cr-472 |
| | ) | |
| vs. | ) | 18 U.S.C. § 1347 |
| | ) | 18 U.S.C. § 982(a)(7) |
| **AMY PINCKNEY** | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| | ) | **INFORMATION** |

## COUNT 1
(Health Care Fraud)

THE UNITED STATES ATTORNEY CHARGES:

### INTRODUCTION

At all times relevant to this Information:

1.    The Defendant, **AMY PINCKNEY**, was a speech language pathologist licensed in South Carolina who provided services in and around Beaufort, South Carolina.

2.    The Defendant, **AMY PINCKNEY**, was the principal owner and operator of Amy H. Pinckney, SLP, a South Carolina entity with its principal place of business located in Beaufort, South Carolina, within the District of South Carolina. The Defendant, **AMY PINCKNEY**, doing business as Amy H. Pinckney, SLP, provided therapeutic services, including speech language pathology (hereinafter "speech therapy"), to patients, many of whom were children of military families and TRICARE beneficiaries.

3.    The Defendant, **AMY PINCKNEY**, through Amy H. Pinckney, SLP, was an authorized TRICARE and Humana Military Healthcare Services (HMHS) provider.

4.    TRICARE was a federal health insurance program of the United States Department of Defense ("DOD") Military Health System that provided coverage for DOD

beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors. The Defense Health Agency ("DHA"), an agency of the DOD, was the governmental entity responsible for overseeing and administering the TRICARE program. HMHS was the Managed Care Support Contractor for the TRICARE program in the South Region, which includes Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, Oklahoma, South Carolina, Tennessee, and portions of Kentucky and Texas. HMHS used Blue Cross and Blue Shield of South Carolina, doing business as Palmetto Government Benefits Administrators (PGBA), to administer and process claims in South Carolina and to manage healthcare provided to TRICARE beneficiaries in South Carolina outside of Military Treatment Facilities.

5.    TRICARE, HMHS, Blue Cross and Blue Shield, and PGBA (referred to collectively as "TRICARE") each individually constituted both a "health care benefit program," as defined by 18 U.S.C. § 24(b) and a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce.

6.    "Beneficiaries" were individuals eligible to receive benefits under a health care benefit program.

7.    Providers of health care services who wish to be receive TRICARE payments must first be enrolled in the TRICARE program. Once approved, providers are issued provider identification numbers. A provider can then submit bills, known as "claims," to TRICARE for services provided to beneficiaries or recipients.

8.    TRICARE requires providers sign Professional Provider Agreements in which they state that they are familiar with the program's billing requirements, that they promise to

abide by the policies and procedures of the program, and that they promise not to submit false or fraudulent claims.

9.     TRICARE provided coverage for speech therapy services.

10.    In her capacity as the principal owner of Amy H. Pinckney, SLP, the Defendant, **AMY PINCKNEY**, signed a Professional Provider Agreement with PGBA, pursuant to which she submitted billings for speech therapy services to TRICARE via PGBA.

11.    In order to receive payment for services rendered to TRICARE beneficiaries, the Defendant, **AMY PINCKNEY**, had to comply with the requirements of the Provider Agreements, Provider Handbook, and other pertinent rules, regulations, and laws, including the submission of true and accurate electronic claims for payment to TRICARE. The information included on claims required Providers to designate, among other things, the date of service, TRICARE beneficiary, medical procedure using the Current Procedural Terminology ("CPT") claims codeset, and service provider by name and National Provider Identifier ("NPI"), which was a unique number issued by the Centers for Medicare & Medicaid Services under the auspices of the United States Department of Health and Human Services.

12.    CPT is a standardized medical codeset involving specific numerical codes maintained by the American Medical Association.    Each CPT code describes a medical-related service and is used by medical professionals and payors to uniformly document and report services.

13.    Pursuant to the Provider Agreements and associated documents, the CPT code designated the service provided and determined the pay rate for claims submitted by the Provider to TRICARE. The speech therapy CPT code, 92507, could only be claimed once per day per

patient regardless of the length of time of the service. For each claim submitted to TRICARE, the service date indicated on the claim had to accurately reflect the date that the actual speech therapy treatment was provided to the patient. The Provider Agreement stated that "[i]n no event will Provider be paid more than what is permissible under Federal law or TRICARE policy."

14.     In order to obtain reimbursement, the Defendant, **AMY PINCKNEY**, was required to complete and submit a claim form, Form CMS-1500, to TRICARE either on paper or by electronic media, which set forth the member's basic information (name, address) and which listed the provider's National Provider Identifier number, the medical service or procedure performed, the member's diagnoses, and the date(s) of service(s). The Form CMS-1500 could list services provided on multiple dates to the same member. When a claim was submitted on the CMS-1500 form, **PINCKNEY** certified that the claimed services were medically indicated and necessary for the health of the patient.   A warning on the form advised providers that knowingly filing a claim containing any misrepresentation or any false, incomplete, or misleading information was against the law.

## SCHEME AND ARTIFICE

15.     Beginning at least in or around 2006 and continuing through in or about 2018, the exact dates being unknown, in the District of South Carolina, the Defendant, **AMY PINCKNEY**, knowingly and willfully did devise and intend to devise a scheme and artifice to defraud and to obtain money from TRICARE by means materially false and fraudulent pretenses, representations, and promises, as well as by omissions of material facts, well knowing at the time that such pretenses, representations, and promises would be and were false when made in submitting false claims for payment to TRICARE as follows:

16.    The Defendant, **AMY PINCKNEY**, submitted and caused to be submitted false claims for speech therapy treatment services using CPT code 92507 for certain TRICARE beneficiaries using several methods including the following:

a.    The Defendant, **AMY PINCKNEY**, would submit or cause to be submitted false claims for speech therapy services that had not actually been performed. In several instances when no services were provided to those TRICARE beneficiaries, rather than submit one claim to TRICARE for the date of service on which the TRICARE beneficiaries actually received speech therapy treatment, the Defendant, **AMY PINCKNEY**, submitted multiple claims for payment for speech therapy treatment services that were purportedly rendered on consecutive days, when in fact she knew that the claims submitted to TRICARE were false when submitted because there were no such services provided to TRICARE beneficiaries beyond the first day for which the services were claimed.

b.    The Defendant, **AMY PINCKNEY**, would submit or cause to be submitted false claims for individual, or one-on-one, speech therapy services when, in fact, she had only provided group speech therapy services.

17.    From in or around 2006 and continuing through in or about 2018, in the District of South Carolina and elsewhere, the Defendant, **AMY PINCKNEY**, knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud TRICARE, a health care benefit program as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and

promises, money and property owned by and under the custody and control of the TRICARE programs, in connection with the payment for health care benefits, items, and services, in that the Defendant, **AMY PINCKNEY**, did submit and cause to be submitted false and fraudulent claims for speech therapy services.

18.    It was further part of the scheme and artifice to defraud that the Defendant, **AMY PINCKNEY**, despite performing group speech therapy services, submitted, and caused to be submitted claims to be reimbursed by TRICARE for individual speech therapy sessions.

19.    It was further part of the scheme that between in or around 2006 and 2018, the Defendant, **AMY PINCKNEY**, did submit and cause to be submitted false and fraudulent claims for speech therapy services to TRICARE for which she received approximately $120,142.5

In violation of Title 18, United States Code, Section 1347.

FORFEITURE

FEDERAL HEALTH CARE FRAUD:

Upon conviction for violation of 18 U.S.C. § 1347, as charged in this Information, the

Defendant, **AMY PINCKNEY**, shall forfeit to the United States any property, real or personal,

which constitutes or is derived from any proceeds the Defendant obtained, directly or indirectly,

as a result of such violation, and any property traceable to such violation.

PROPERTY:

Pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c), the property which is subject

to forfeiture upon conviction of the Defendant for the violation charged in this Information

includes, but is not limited to, the following:

A. Proceeds/Forfeiture Judgment:

A sum of money equal to all proceeds the Defendant obtained, directly or
indirectly, from the offense charged in this Information, that is, a minimum
of approximately $120,142.56 in United States currency, and all interest and
proceeds traceable thereto, and/or that such sum equals all property derived
from or traceable to her violation of 18 U.S.C. § 1347.

SUBSTITUTION OF ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act

or omission of the Defendant:

(a)  cannot be located upon the exercise of due diligence;
(b)  has been transferred or sold to, or deposited with, a third person;
(c)  has been placed beyond the jurisdiction of the Court;
(d)  has been substantially diminished in value; or
(e)  has been commingled with other property which cannot be subdivided
     without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by 18 U.S.C. § 982(b)(1) to seek forfeiture of any other property of the Defendant up

to an amount equivalent to the value of the above-described forfeitable property;

Pursuant to Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c).


M. RHETT DEHART (ko)
ACTING UNITED STATES ATTORNEY